**BRYSON HARRIS SUCIU**
**& DeMAY PLLC**
Trenton R Kashima (SBN 291405)
19800 MacArthur Blvd., STE 270
Irving, CA 92612
Tel: 619-810-7047
tkashima@brysonpllc.com

***Attorney for Plaintiffs and the Class***

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

KATRINA HILL and LISA WEEKS, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

BESTWAY (USA) INC.,

Defendant.

Case No. ___________

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Katrina Hill and Lisa Weeks ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Bestway (USA) Inc. ("Bestway" or "Defendant") and allege the following based on personal knowledge as to themselves, and as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1. This proposed class action involves hundreds of thousands of dangerously defective above-ground pools designed, manufactured and sold by Defendant Bestway (hereinafter the "Pool(s)" or "Product(s)"), which were subject to a delayed, deficient and defective Recall.[1]

2. Bestway markets itself as a leader in the pool market, boasting "[w]e proudly develop and manufacture our products in-house, ensuring our quality goods reach customers with care;" "[w]e're committed to innovating and leading the industry through our research, design, development and manufacturing;" "[e]very department at Bestway works closely together—from our technology and quality assurance centers to our laboratories and vertically integrated manufacturing systems to our after-sales service centers around the globe;" "[a]t Bestway, we hold ourselves and our products to a very high standard;" and [t]he satisfaction and safety of our customers is a top priority."[2]

---

[1] The Recall affects Bestway-branded pools 48 inches and taller—including millions of Power Steel and Steel Pro models sold between 2008 and 2024 under the Bestway and Coleman name. Plaintiffs reserve the right to amend this Complaint to include additional products arising from the discovery. *See* https://bwrecallsupport.expertinquiry.com/?lang=en and https://www.cpsc.gov/Recalls/2025/Bestway-Intex-and-Polygroup-Recall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-Deaths-Reported-Five-Million-Pools-Sold-Since-2002 (hereinafter "Recall").

[2] *See* Bestway site, https://bestwayusa.com/our-mission (last accessed Oct. 9, 2025); *see also* https://bestwayusa.com/recall-and-safety (last accessed Oct. 9, 2025).

3. The safety of children, an incredibly vulnerable population, is paramount. A company, such as Bestway, that touts itself as a trusted consumer product industry leader, and sells products for use by families and their children, has a legal obligation to honestly and adequately represent the safety of its products and to provide adequate warnings about safety hazards. As shown herein, Bestway wholly failed in these obligations, both before and after multiple drowning deaths of children in pools with the same or similar design.

4. This action arises from the dangerous design and prolonged concealment of a known defect in certain Bestway-branded Pools. The Pools were dangerously defective at the point of purchase, which was unknown to reasonable consumers, but known to Bestway. Now, following multiple child deaths, Bestway concedes through its deficient recall notice that the Pools pose a drowning hazard:

> **WHAT IS THE HAZARD?**
>
> On recalled above-ground pools, the compression strap that surrounds the outside of the pool legs may create a foothold, which could allow a child to gain access to the pool and create a potential drowning hazard. The recall repair consists of a rope that will maintain the structural integrity of the pool (a function previously served by the compression strap).[3]

5. As Bestway admits in the Recall Notice, Bestway designed, manufactured, marketed, distributed and sold the Pools with compression straps located external to the Pools' vertical support poles (hereinafter the "Defect")—design elements that created an accessible foothold for children to climb into the Pool, posing a drowning hazard for vulnerable children:

[3] *See* Recall Notice ("Recall Notice"), https://bestwayusa.com/recalls-pool-strap (last accessed Oct. 9, 2025).



*Image 1*[4]

6. On July 21, 2025, the CPSC, together with Bestway and other manufacturers, announced (the "CPSC Press Release") the voluntary recall of approximately 5 million above-ground pools sold at major retailers nationwide since 2002 that resulted in at least nine deaths of children aged between 22 months and 3 years old between the years 2007 and 2022 (the "Recall").[5] Bestway sold approximately 2.4 million of these recalled pools.

---

[4] U.S. Consumer Product Safety Commission ("CPSC") example of a child using the compression strap to stand on the Pool, illustrating the Defect and associated hazard. https://www.cpsc.gov/Recalls/2025/Bestway-Intex-and-PolygroupRecall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-DeathsReported-Five-Million-Pools-Sold-Since-2002 (last accessed Oct. 9, 2025).

[5] *See* CPSC Press Release, https://www.cpsc.gov/Recalls/2025/Polygroup-and-other-manufacturers-recall-pools-after-drownings (last accessed Oct. 9, 2025); *see also* Houston Chronicle – *5 million above ground pools recalled after 9 children drowned in 15 years, US agency reports* (published on July 21, 2025), https://www.houstonchronicle.com/news/houston-texas/trending/article/millions-above-ground-pools-recalled-9-children-20778185.php (last accessed Oct. 9, 2025).

7. The CPSC's Acting Chairman Peter A. Feldmann and Commissioner Douglas Dziak described the Recall as "long-overdue" and stated the Defect was "a textbook example of a dangerous design flaw, plainly visible and clearly hazardous".[6] However, the Recall is not a form of adjudication and, as alleged herein, was at all times, and continues to be, inadequate and ineffective.

8. The CSPS Press Release and the Recall Notice evidence that the Pools' design flaw was not inherent or unavoidable since other pool models not subject to the Recall contained an internal compression strap that cannot be used as a foothold and associated drowning hazard for children.[7]




*Image 2*[8]

---

[6] *See Statement of Acting Chairman Peter A. Feldman and Commissioner Douglas Dziak: Deadly Design in Chinese Pools Triggers Massive Recall; CPSC Leaders Cite Years of Inaction* (published on July 21, 2025),https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction (last accessed Oct. 9, 2025).

[7] *See* CPSC Press Release; Bestway Recall Notice.

[8] Bestway illustration of the recalled versus the non-recalled pool models. (https://bestwayusa.com/recalls-pool-strap) (last accessed Oct. 9, 2025).

9. Per the Recall Notice, customers with and without children were instructed to identify if their above-ground pool was affected by the Recall and submit the model number through the website for approval. If confirmed, the customer was instructed to order a "repair kit" on the following screen.[9]

10. The repair kit consists of a mere rope that allegedly substitutes the compression straps to maintain the Pool's structural integrity, along with a "pulley" and plastic "C-shaped holders" that are designed to be placed at the base of each leg of the Pool frame.[10] According to the Recall Notice, "[t[he strap maintains structural integrity and helps the legs of the [P]ool remain upright. The strap should only be cut after the repair kit is installed."[11]

11. Installation of the rope requires a 5-step process.[12] Nowhere does Bestway offer technicians to assist with installation of the repair kit, despite the required multi-step installation process.

12. Notably, ***Bestway fails to recall the entire Pool*, *or provide any monetary remedy*** to Plaintiffs and Class Members who purchased the defective Pools. Instead, Bestway only offers an inadequate repair kit without the assistance of a qualified technician. Even if customers express concerns over repairing the Pools themselves, Bestway does not offer on-site repairs, exclusively offering "further guidance" through a call center or email.[13] With limited instruction and no professional assistance, a consumer must thread a rope behind the vertical legs of

---

[9] *See* Bestway Notice Recall; *see also* https://bwrecallsupport.expertinquiry.com/faq?lang=en (last accessed Oct. 9, 2025).

[10] *Id.*

[11] *Id.*

[12] *See* Bestway instructional video, https://s3.bestwaycorp.com/qrcode/video/69e7acc5-1a3a-42cf-a15e-9aa3546e9e03.html (last accessed Oct. 9, 2025).

[13] *See* https://bwrecallsupport.expertinquiry.com/faq?lang=en (last accessed Oct. 9, 2025).

the pool, through a *de minimus* tightener and plastic rope holders at the base of the Pool legs. While Bestway maintains that the rope is a convenient and easy-to-apply solution that ensures the structural integrity of the Pool, this representation is a farce.

13. A compression strap holds objects together by applying tension and pressure for stability of what they are applied too. The "compression straps" that are subject to the Defect are aptly named because they help to hold the pool in its intended shape (i.e. to support the significant weight from water held in the Pools that exert outward force against the Pool walls). Here, the Pools were designed with a compression strap that wraps around the Pools, near the mid-section, to help maintain the structural integrity by supporting the critical load that the water exerts on the Pools' walls.

14. The Recall parameters instruct consumers to remove this structural compression strap in favor of a rope that wraps around the bottom of the Pool. By doing so, this creates a longer unsupported length in the Pool walls. For products under these types of loads, here the significant water weight held by the Pools walls and columns, a longer unsupported length lowers the loads the Pools' components can withstand. Here, removing the compression strap in the mid-section of the pool in favor of the rope at the bottom of the pool creates a longer, unsupported length. This adversely impacts the structural integrity of the Pools because an increase in the unsupported length of a structural member (the Pool walls and columns), creates greater deflection under a certain load. In other words, an increased unsupported (or unbraced) length makes the Pools more flexible and less stable, decreases the Pools' outer structure's load bearing capacity and increases its susceptibility to deflection or even buckling. Thus, the rope that consumers are instructed to install around the bottom of the Pools decreases the strength of the Pools outer structure, making the Pools less able to withstand the outward force from the water in the Pools.

15. Further, ultraviolet rays from the sun, particularly direct sunlight to which the rope will be exposed, can cause a breakdown of the fibers that make up the rope, which can weaken the fibers over time, making them prone to fraying . In addition, the rope is likely to loosen over time, which requiring constant tensioning or could even result in premature failure. Instruction on the continued tension is not provided, making more likely that the "fix" proposed by Bestway will only result in failure of the Pool.

16. Moreover, research shows that response rates are lower for recalls that require complicated steps and fail to provide consumers with a full refund.[14]

17. The inadequacy of the repair kit is further evidenced by the other above-ground pools sold by Bestway. These Pools continue to include the strap wrapped close to the midsection of the Pool behind the poles, which prevents the Pool legs from sliding, and not a rope on the ground that can fray and requires constant attention, confirming that the rope is not an adequate substitute for maintaining the structural integrity of the Pool. Instead, the rope is a cheap way for Bestway to avoid replacing the Pools or providing refunds, costing Bestway just a few dollars rather than impacting Bestway's significant revenue gained at the expense of consumers.[15]

18. Moreover, the Recall was announced far too late and is inadequate and inefficient for the reasons described herein. The CPSC confirmed that the Pools' Defect and associated risks were known since 2007, before Bestway distributed and sold the Pools. As detailed in the CPSC Press Release:

> CPSC believes that nine children between the ages of 22 months and 3 years old have drowned after gaining access to the pools via the

---

[14] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed Oct. 9, 2025).

[15] Plaintiffs reserve the right to amend the Complaint pertaining to the inadequacy of the repair kit following expert discovery and disclosures.

> footholds. The incidents occurred in California, Texas, Florida, Michigan, Wisconsin and Missouri between 2007 and 2022.
>
> CPSC is also aware of three other incidents in 2011 and 2012 where children who gained access to the recalled pools were reported to have previously used the compression strap to gain entry to the pool.[16]

19. Prior to the Recall and despite the serious dangers to child safety presented by the Pools, Bestway intentionally marketed and sold the Pools as safe for families and children, and failed to effectively disclose to consumers that the Pools posed a drowning hazard for children.

20. Bestway knew, or should have known, of these incidents, yet it did nothing. Indeed, despite reported incidents dating back to 2007 in pools with the same Defect, Bestway failed to issue any warning or make design changes to remedy the Defect and continued profiting from its sales throughout the United States.

21. Even more egregious, Bestway knowingly continued to design, manufacture, market and sell the defective Pools with an external compression strap—functioning as a built-in ladder—*after* a $25 million lawsuit in 2019 over the drowning of a two-year-old girl who climbed into the pool by using that very strap, positioned just a foot above the ground, as a step to gain access.[17]

22. The Defect existed at the point of purchase. Due to Bestway's marketing of the Pools, along with Bestway's failure to disclose to consumers at the time of purchase that the Pools contained the Defect, Plaintiffs and Class Members trusted Bestway and its representations that the Pools would be safe to use as intended and paid a premium for that important quality. Additionally, despite the Recall, defects in the Pools persist, rendering them unfit and worth less than advertised and warranted.

---

[16] *See* CPSC Press Release.

[17] *See* Parents Awarded $25M for child's drowning in defective pool design: Records (published March 4, 2025), https://fox2now.com/news/missouri/parents-awarded-25m-for-childs-drowning-in-warren-county/ (last accessed Oct. 9, 2025).

23. The existence of the Defect is a material fact that reasonable consumers, including Plaintiffs and Class Members, would have considered when deciding whether to purchase the Pools. Before purchasing the Pools, Plaintiffs and Class Members did not know that the Pools had the Defect and that using the Pools for their intended and foreseeable purpose would place their children at risk of drowning.

24. Every Pool suffers from the uniform Defect, which, unknown to consumers, but known to Bestway, exists at the point of purchase and poses an unreasonable safety hazard to consumers and their children. As such, Plaintiffs and all reasonable consumers are victims of the unfair bargaining power between them and Bestway based on Bestway's superior industry knowledge.

25. The Pools were sold at stores nationwide, including Walmart, Target, Sears, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots, Costco and BJ's (among others).[18] They were also sold on Bestway's website and other internet platforms, including Amazon.com, Wayfair.com, and Walmart, among other authorized retailers.[19]

26. Bestway made significant revenue from the sale of the Pools, which were sold nationwide for approximately $400.00 to over $1,000.00.[20]

27. Bestway was able to charge this premium price for the Pools due to its marketing, and its failure to disclose to consumers that the Pools contain the Defect, because Bestway knew that safety and suitability of the Pools for use (which naturally includes structural integrity and lack of a risk of harm or death to themselves and their children) is paramount for consumers.

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

28. Further, Bestway is well aware that if it truthfully informed consumers of the dangers of the Pools' Defect, it would significantly impact its sales as consumers would have made different purchasing decisions

29. No reasonable consumer would have purchased Pools on the same terms or conditions if they knew of the Defect. Bestway chose to put consumers' and their children's lives at risk to sell more Pools and now, after the inevitable deaths are brought to light, Bestway still opts for decisions that put profit over people. Despite its belated acknowledgment of the Defect, Bestway still has not provided meaningful remedy to consumers, including Plaintiffs and Class Members.

30. Had Plaintiffs and Class Members known about the Defect at the time of purchase and the associated fatal risks caused by the Defect, they would not have purchased the Pools or would have paid less for them.

31. Plaintiffs, on behalf of themselves and Class Members, seek damages and all other relief available under law and equity from Bestway, including punitive damages for Bestway's appalling and unconscionable misconduct. Plaintiffs also seeks classwide injunctive relief, including: (i) a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Pool; (ii) the implementation of a corrective advertising campaign to alert consumers to the dangers of the Defect; (iii) an offer to replace the Pools with a reasonable and safe product; and/or (iv) a full refund for the purchase price of the Pools. Plaintiffs provided Bestway with notice of the breach of express warranty via service upon Bestway's registered agents of service on October 10, 2025.

32. This action seeks to hold Bestway accountable for its conscious decision to use a defective design, conceal the known Defect and for its insufficient recall remedy.

## PARTIES

**I. Plaintiff Katrina Hill**

33. At all relevant times, Plaintiff Hill was and is a resident and citizen of Ukiah, California, who purchased a Bestway Coleman Power Steel 18ft x 48inches round metal frame above ground pool in the summer of 2022, from Walmart for around $500.00. The Pool purchased by Plaintiff Hill is subject to the Recall.

34. Plaintiff Hill used the Pool as instructed, including removing the ladder when the Pool was not in use, in order to maintain a safe environment for her family and others. Plaintiff Hill was unaware of the Defect until she learned of the Recall on or around August 2025

35. Had Plaintiff Hill known of the Defect she would not have purchased the Pool or would have paid less for it.

36. Plaintiff Hill is unable to safely use and maintain her Pool. The repair kit offered by Defendant is ineffective and inadequate due to the confusing nature of the repair kit and instructions. However, had Plaintiff Hill been able to install the repair kit, it would have remained an ineffective resolution to the Defect because the rope included in the repair kit can fray and loosen over time, resulting in new risks to her and places the structural integrity of the Pool at risk.

**II. Plaintiff Lisa Weeks**

37. At all relevant times, Plaintiff Weeks was and is a resident and citizen of Riverside, California, who purchased a Bestway Steel Pro 15ft x 48 inches round steel frame above ground pool in July 29, 2024, from Amazon for $279.99. The Pool purchased by Plaintiff Weeks is subject to the Recall.

38. Plaintiff Weeks used the Pool as instructed, including removing the ladder when the Pool was not in use, in order to maintain a safe environment for her family and others. Plaintiff Weeks was unaware of the Defect until she learned of the Recall on or around August 2025.

39. Had Plaintiff Weeks known of the Defect she would not have purchased the Pool or would have paid less for it.

40. Plaintiff Weeks is unable to safely use and maintain her Pool. The repair kit offered by Defendant is ineffective and inadequate due to the confusing nature of the repair kit and instructions. However, had Plaintiff Weeks been able to install the repair kit, it would have remained an ineffective resolution to the Defect because the rope included in the repair kit can fray and loosen over time, resulting in new risks to her and places the structural integrity of the Pool at risk.

**III. <u>Defendant Bestway (USA) Inc.</u>**

41. Defendant Bestway (USA) Inc. is a Delaware corporation headquartered in Chandler, Arizona. Upon information and belief, Defendant or its subsidiaries are involved in the design, manufacturing, marketing, sale and distribution of the recalled Products.

42. Upon belief or information, until July 2025, Defendant directly or through third-party entities, designed, manufactured, distributed, marketed, advertised and sold the recalled Pools at stores nationwide, including Walmart, Target, Sears, Lowe's, Kmart, Toys "R" Us, Sam's Club, The Home Depot, Big Lots, Costco and BJ's (among others). They were also sold on Bestway's website and other internet platforms, including Amazon.com, Wayfair.com and Walmart, among other authorized retailers.

## <u>JURISDICTION AND VENUE</u>

43. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiffs and at least one Defendant are citizens of different states.

44. This Court has personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives

substantial compensation and profits from the marketing, distribution and sale of the Pools in this District and engaged in the unlawful practices described in this Complaint within this District.

45. Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, as Defendant regularly transact business in this District and Defendant has intentionally availed itself of the laws and markets within this District.

## COMMON FACTUAL ALLEGATIONS

### I. Bestway Markets its Pools and Itself as an Industry Leader in Safety, Contrary to Its Actual Business Practices

46. Defendant Bestway is a leading manufacturer of above-ground pools and outdoor inflatable products, with a global footprint spanning over 110 countries and over 1,000 product lines. Since its founding in 1994, Bestway has emphasized innovation and structural design in its pool products, presenting itself as a trusted brand in pool safety and quality.[21]

47. From approximately 2008 through 2024, Bestway manufactured and sold above-ground pool models, including but not limited to Power Steel®, Steel Pro MAX™ and Coleman® Power Steel™ series, which featured exterior "compression straps" or support belts designed to maintain circular pool wall stability.[22]

48. These straps, which wrap around the Pool's circumference at mid-height, protrude outward from the Pool frame and are accessible from ground level. According to the CPSC, this strap creates an unintended foothold that allows

---

[21] *See* Bestway site, https://bestwayusa.com/our-mission (last accessed on Oct. 9, 2025); *see also* https://bestwayusa.com/recall-and-safety (last accessed on Oct. 9, 2025).

[22] *See* Bestway Recall, https://bestwayusa.com/recalls-pool-strap (last accessed Oct. 9, 2025).

children to climb into the Pool without a ladder, creating a significant drowning hazard.[23]

49. Nevertheless, Bestway marketed the Pools for the intended use of children and adults, stating, for example: "***Make a Splash of Memories*** **-** Bestway® offers a wide variety of above ground pools for all ages, family sizes and lifestyles, so you can choose a frame pool, inflatable ring pool, family pool or kiddie pool that fits your specific needs and backyard size" and the Pools "are perfect when you want to take a quick dip while you play with the kids in your backyard."[24]

50. Bestway's marketing of the Pools explicitly highlights the Pools' safety and durability compared to others in the market, stating, for example, "For over a decade, Bestway USA has designed and produced high-quality, innovative inflatable recreational items to bring joy, relaxation and fun to people's lives" and "Bestway frame pools feature durable, puncture-resistant liners and corrosion-resistant metal frames. Easy to set up and take down at the end of a season, Bestway frame pools are more cost-effective and convenient than traditional in-ground pools."[25]

51. Similarly, Bestway utilizes additional safety representations in the Pools' Owner's Manuals further ensuring consumers that the safety and wellbeing of its customers and their children is of paramount concern. By way of example the Owner's Manual has a section titled "Important Safety Instructions." Shockingly however, neither this, nor any section of any Owner's Manual, gives proper warning or notice that children can use the external compression straps to access the pool. Instead, Bestway only states the following: "Remove pool ladders before leaving pool. Toddlers can climb ladder and get into pool. Position furniture away from pool so that children cannot climb and gain access to pool. When leaving pool, remove

---

[23] *See* Recall Notice.

[24] https://bestwayusa.com/pools/pools (last accessed Oct. 9, 2025).

[25] https://bestwayusa.com/our-story (last accessed Oct. 9, 2025); https://bestwayusa.com/pools/pools (last accessed Oct. 9, 2025).

floats and toys from pool that might attract a child."[26] This leads reasonable consumers to believe that if they follow these instructions, any drowning hazard will be eliminated.

52. Contrary to Bestway's representations—promising the safety and durability of its Pools—Bestway chose to ignore the uniform Defect present in each Pool. In doing so, Bestway revealed that it is, in reality, committed to its own profits—not people and Defect-free Pools.

## II. Bestway Knew, or Should Have Known, of the Defect

53. Prior to the design or introduction of the Pools into the marketplace, Bestway knew, or should have known, that the Pools had similar design elements as those that reported drowning incidents beginning in 2007. Consequently, Bestway was aware of the Pools' Defect. However, Bestway continued to market, sell and profit from the defective Pools.

54. At least **nine children between the ages of 22 months and 3 years** drowned in pools with the same or similar defect to the Pools between 2007 and 2022. These deaths occurred in six different states: California, Florida, Michigan, Missouri, Texas and Wisconsin.[27]

55. The CPSC also confirmed at least **three near-drowning incidents** associated with the recalled pool design in 2011 and 2012.[28]

56. Furthermore, in January 2022, Bestway was subject to a wrongful death lawsuit resulting from a death caused by an identical Defect as that found in the

[26] Bestway Owner's Manual, Steel Pro, Steel Pro Max and Power Steel, https://bestwayusa.com/media/pdf_files//5617WE.pdf?srsltid=AfmBOooW29QuP4rXkbJUTrMTpO6aMaTN3xLYVdKWpLSM2oFV7jvqN6Es (last accessed Oct. 9, 2025).

[27] *See* Recall Notice.

[28] *Id.*

Pools.[29] Notably, the Pool subject to the lawsuit is also part of the Recall because it has an identical defect to that of the Pools subject to this action.

57. In the lawsuit, the plaintiffs alleged that "[t]he design of the pool rendered it defective. The lack of adequate warnings accompanying the pool rendered it defective. Defendants failed in their acts and omissions related to the pool to use reasonable care to avoid injuring E. M. J. and [p]laintiffs. Defendants breached express warranties made about the pool. The defective nature of the pool and [d]efendants' negligent conduct and breach of warranties proximately caused E. M. J.'s horrific suffering and death by drowning and caused [p]laintiffs to sustain pecuniary loss, including funeral expenses and burial expenses for their daughter E. M. J., as well as loss of consortium, companionship, comfort, guidance, and counsel of their daughter E. M. J."[30]

58. In March 2025, after a weeklong trial, the jury ruled that Bestway was liable for E.M.J.'s death, primarily due to its defective Pool design and failure to provide adequate warnings about the Defect. The verdict found that the 51-inch-tall pool was designed in a way that allowed toddlers to climb into it using a nylon strap wrapped around the Pool's exterior and ordered Bestway to pay $25 million in damages—the very design flaw that results in the Defect and the associated risk of drowning at issue here.

59. Indeed, the Defect existed throughout the 19-year span of the Pools' availability. Notably, Bestway has access to incident data, consumer feedback and industry standards for pool safety and design that should have led to corrective design action far earlier, and long before so many children died.[31] The fact that Bestway sold other pool models, not subject to the Recall, that do not feature an

---

[29] *Justice, et al. v. Bestway (USA), Inc., et al.*, No. 4:22-cv-00050-AGF, ECF No. 5 (E.D.Mo. Jan. 18, 2022).

[30] *Id*. at ¶ 2.

[31] *Id.*

exterior compression strap, indicates that Bestway was well aware of a corrective and alternative design long before the Recall was issued.

60. The known risks due to the Defect, the decades-long availability of safer designs, Bestway's dominant position in the pool market and the likelihood that a substantial portion of defective Pools remain in use, all support Plaintiffs' allegations that Bestway acted with knowledge of the Defect yet still represented, marketed, distributed and sold defective Pools.

## III. <u>The Recall was Untimely and is Inadequate, Ineffective, Creates New Hazards and was Designed to Fail</u>

61. On July 21, 2025, the CPSC announced a voluntary nationwide recall of approximately **5 million** above-ground pool units sold in the United States by Bestway, Intex and Polygroup, which contain the identical Defect (*e.g.*, compression straps on the exterior poles of the above-ground pools that are 48 inches or taller, which pose a drowning hazard).

62. However, the Recall is nothing short of perilous due to its inexcusable delay in notice and the wholly inadequate repair kit. Despite the Defect rendering the Pools unsafe and unsuitable for their intended use, the Pools remained on the market following multiple deaths and remain on the market after a weak Recall that does not provide proper remedies, includes incredibly complicated and confusing instructions, continues to put consumers and their children at risk and was ultimately designed to fail.

63. Despite having the capability and expertise to identify and mitigate the Defect, Bestway failed to redesign the Pools, remove the external strap or issue sufficient consumer warnings for over two decades. This delay contributed to the continued availability of defective Pools and the repeated loss of lives. As stated by CPSC's Acting Chairman Peter A. Feldmann and Commissioner Douglas Dziak, the

Recall was "long-overdue."[32] Further, Chairman Feldmann and Commissioner Dziak of the CPSC summarized the Defect as "a textbook example of a dangerous design flaw, plainly visible and clearly hazardous."[33] Nevertheless, Bestway prioritized profit over the integrity and safety of the Pools and pushed the Pools into the marketplace with the Defect.

64. Bestway's actions and priorities in delaying the Recall clearly indicate a prioritization of profit over safety of consumers and their children. Bestway made significant revenue from the sale of the Pools, which were sold nationwide resulting in hundreds of millions of dollars in revenue.

65. Further, as detailed herein, the Recall and corresponding repair kit offered to consumers is wholly inadequate and is designed to fail in that: (1) the rope, by its nature and by its positioning in relation to the Pool and the Pool legs, is wholly inadequate to maintain the structural integrity of the Pool; (2) the instructions for installing the repair kit are prohibitively confusing to reasonable consumers; (3) the Recall fails to offer any monetary relief to Plaintiffs and Class Members who purchased the defective Pools; and (4) Bestway has not removed or destroyed all defective Products available for purchase.

66. As detailed herein, the Recall remedy is a repair kit with a rope to replace the compression strap and installation instructions. However, this purported

---

[32] *See Statement of Acting Chairman Peter A. Feldman and Commissioner Douglas Dziak: Deadly Design in Chinese Pools Triggers Massive Recall; CPSC Leaders Cite Years of Inaction* (published on July 21, 2025),https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction (last accessed Oct. 9, 2025).

[33] *Id.*

remedy requires affirmative consumer action and creates further risk to consumers and their children.[34]

67. The Recall parameters instruct consumers to remove the structural compression strap in favor of a rope that wraps around the bottom of the Pool. By doing so, this creates a longer unsupported length in the Pool walls, which lowers the loads the Pools' components can withstand. This adversely impacts the structural integrity of the Pools because an increase in an increase in the unsupported (or unbraced) length makes the Pools more flexible and less stable, decreases the Pools' outer structure's load bearing capacity and increases its susceptibility to deflection or even buckling. Thus, the rope that consumers are instructed to install around the bottom of the Pools decreases the strength of the Pools outer structure, making the Pools less able to withstand the outward force from the water in the Pools.

68. Further, ultraviolet rays from the sun (particularly direct sunlight which these ropes are inevitably exposed) can cause a breakdown of the fiber that make up the rope, which can weaken the fibers over time and make them prone to fraying. A frayed rope can become a rough surface that can injure consumers' and their children's feet when stepped on or create a trip hazard.

69. In addition, the rope may loosen over time, which could require constant tension adjustment, further adversely impacting the structural integrity of the Pool.

70. Even more, although the repair kit is not an adequate substitute for a compression strap running internally to the support poles around the Pool, installation of the repair kit itself is another failure of the Recall. Installation of the rope requires a 5-step process.[35] Bestway's Recall Notice does not even offer

---

[34] *See* CPSC Press Release.

[35] *See* Bestway instructional video, https://s3.bestwaycorp.com/qrcode/video/69e7acc5-1a3a-42cf-a15e-9aa3546e9e03.html (last accessed Oct. 9, 2025).

technicians to assist with installation of the repair kit despite the required multi-step installation process. As evidenced by the instructions provided, Bestway places the onus of ensuring the structural integrity of the Pools upon the consumer in a spectacularly convoluted and intricate manner—the result of which is a very low likelihood that a reasonable consumer could properly install the repair kit as instructed.[36]

71. Given the confusing instructions provided to install the repair kit and the likelihood of consumers in need of support to follow the installation instructions, Bestway knew, or should have known, that it needed to provide consumers with support in installing the repair kit. However, in continuing its pattern of prioritizing profits over the structural integrity of its Pools and the safety and wellbeing of its consumers and their children, Bestway refuses to provide consumers with the option to schedule a technician to assist with the installation. Instead, Bestway provides consumers with an 800 number and an email address—neither of which provide reasonable support to consumers.

72. A study conducted by Kids in Danger found that product recalls generally have a low level of participation when the recall includes cognitive overload, requires significant time and effort, offers a repair (versus a refund which has higher participation), and when consumers are asked to repair, deconstruct and/or physically destroy parts of the product, but to continue using them in this destructed form rather than a safe replacement product.[37]

---

[36] Bestway, FAQ, https://bwrecallsupport.expertinquiry.com/faq?lang=en, at Repair Instructions (English) (last accessed Oct. 9, 2025).

[37] New KID Report and Consumer Survey Reveal Need for Improvements in Children's Product Recall Process, Kids In Danger, Press Release, (September 12, 2024) https://kidsindanger.org/wpcontent/uploads/2024/09/Recall-Effectiveness-and-Survey-Report-PressRelease.pdf#:~:text=%5BChicago%2C%20IL%5D%20%E2%80%93%20Kids%20In%20Dange r%20%28KID%29%2C%20a,new%20reports%20looking%20to%20better%20ass

73. As noted by a study prepared for the CPSC, response rates for recalls are significantly reduced when it involves cognitive or task overload, and when they do not adequately motivate consumers to participate.[38]

74. Thus, the Bestway's design of the Recall instructions, as well as its choice to require the surgical removal of parts of the Pools by their consumers—who trusted Bestway to sell them a Product safe and suitable for their and their children's use—renders the Recall's ability to inspire participation a dismal prospect at best. Bestway's failure to offer consumers with a monetary refund further culls the Recall's effectiveness resulting in a Recall that is inherently stunted and designed to fail.

75. Bestway intentionally chose the route more profitable for its business and assumingly less damaging to its branding and purported commitment to safe and durable Pools.

76. Further, it is well known that product recalls generally have a low level of participation when consumers are not provided with a full remedy:

> Generally, firms should offer full remedy to achieve high recall effectiveness. While this seems like an obvious suggestion, our data shows that firms do not always follow that suggestion, even when the product and defect are the same. This is particularly puzzling as research also indicates that offering full remedy is the dominant strategy to preserve customer satisfaction after a product recall (Mafael, *et al*., 2022) and protects firm reputation after the recall (Germann, *et al*., 2014).[39]

---

ess%20recall %20effectiveness and https://kidsindanger.org/wp-content/uploads/2024/09/KID-ConsumerRecall-Survey-Report.pdf (last accessed Oct. 9, 2025).

[38] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed Oct. 9, 2025).

[39] Sascha Raithel, *et al*., Product recall effectiveness and consumers' participation

Despite the knowledge that full remedies lead to higher recall rates, and a serious risk the Defect presents and the additional risks the repair kit presents, Bestway offered a minimal remedy in its Recall, ensuring lower participation rates that will put more consumers and their children at risk as the Pools remain at homes throughout the country.

## IV. **The Unconscionability and Failure of Essential Purpose of the Warranties**

77. Bestway expressly warranted, via Owner's Manuals, advertisements, pamphlets, brochures, circulars, samples and models, that the Pools are fit for the ordinary purpose for which they are sold.

78. Prior to the point of sale, Bestway also warrants that its Pools are safe and durable, as evidenced by its advertisements and warning in the Owner's Manuals regarding the removal of the ladder and objects adjacent to the Pools when not in use.

79. Moreover, Bestway's Pools are covered by the warranty of merchantability, which guarantees that a seller who deals in particular goods by their occupation promises that the goods sold are fit for their ordinary purpose for which they are intended to be used.

80. Bestway clearly intended its warranties to apply directly to these consumers who depend on Bestway to provide safe and durable Pools.

81. Bestway manifests intent that its warranties apply to Plaintiffs and Class Members as third-party beneficiaries is evident from the statements in its product literature, which begins on the date of the consumers' purchases and excludes commercial, non-residential use.

---

in corrective actions, Journal of the Academy of Marketing Science (Aug. 19, 2023), https://link.springer.com/article/10.1007/s11747-023-00967-x (last accessed Oct. 9, 2025).

82. However, despite these warranties, as described herein, the Pools contain a uniform Defect prior to and at the time of purchase, causing them to commonly and consistently fail in their primary purpose.

83. Bestway knew, or should have known, of the Defect and dangers posed in its Pools prior to and at the time of sale of the Pools to consumers.

84. Plaintiffs and Class Members, on the other hand, had no way of knowing of the Defect or the dangers presented by the Pools prior to purchase.

85. The express warranties relating to the Pools are collectively and individually the result of surprise and oppression and are so one-sided and overly harsh that they are both procedurally and substantively unconscionable.

86. Bestway knew, or should have known, of the Defect in its Pools prior to and at the time of sale, including from its design of the Pools, knowledge of industry pool safety guidance and recommendations, receipt of CPSC complaints, prior wrongful death litigation, as well as from warranty claims made directly to Defendant.

87. Bestway was in a superior position to know of, remedy and disclose the Defect in its Pools to Plaintiffs and Class Members, who could not have known of their defective nature at the time of purchase.

88. There was a substantial disparity between the parties' bargaining power such that Plaintiffs were unable to derive a substantial benefit from these express warranties.

89. A disparity existed because Bestway was aware that the Pools were defective, while Plaintiffs and Class Members had no notice or ability to detect said Defect, and had no reason to believe such a Defect existed due to Bestway's marketing of itself and the Pools as industry leaders in pool safety.

90. Bestway abused the special relationship it created with consumers through its marketing and through its designing, manufacturing, marketing and selling the Pools as products specifically safe and durable that consumers had no

choice other than to trust Bestway's representations and thus accept the terms of the warranties.

91. Bestway knew Plaintiffs and Class Members had no notice or ability to detect the Pools' uniform Defect, and Bestway knew that Plaintiffs and Class Members would bear the cost of remedying or replacing the Pool.

92. Bestway knew of the Defect at the time of sale, while Plaintiffs and Class Members had no ability to discover the Defect at the time of sale.

93. Bestway was in breach of the warranties at the time Plaintiffs and Class Members purchased the Pools because they were defective when they came off the assembly line. Thus, at the time the defective Pools were sold to consumers, Bestway was already in violation of its warranties.

94. Bestway sold the Pools knowing that they were not capable of being repaired or replaced with a non-defective Pool.

95. Plaintiffs and Class Members would have negotiated better terms in the purchase of the Pools had they been aware of the Defect.

96. Bestway sold the Pools with knowledge of the Defect and of the fact that the Pools failed to conform to Bestway's marketing of itself and the Pools as industry leaders in safety and failed to be safe and suitable for the Pools' foreseeable and intended purpose and use.

97. The terms of the express warranties unreasonably favor Bestway over Plaintiffs and Class Members.

98. In addition, the express warranties failed in their essential purpose in that: (1) the Defect existed at the time the Pools left the manufacturing facility; and (2) Bestway failed to disclose its knowledge of the Defect at any time and even when contacted by customers about the Pools.

99. Accordingly, recovery by Plaintiffs and Class Members is not restricted to the promise in any express warranties, and they seek all remedies that may be allowed.

## V. <u>Injury to the Public at Large, the Potential for Future Harm and Need for Injunctive Relief</u>

100. Bestway's wrongful conduct harms the public-at-large. Namely, by misrepresenting the Pools as safe and durable and by failing to disclose that the Pools contain a uniform Defect and exposes consumers and their children to the risk of serious injury and death, the harm extends to all Class Members and consumers who may purchase the Pools.

101. In addition, because Bestway continues to encourage consumers to use the Pools as described herein, Bestway's actions pose an ongoing risk to the public.

102. As such, a public injunction is necessary to enjoin Bestway's continued harm of consumers and the public-at-large.

103. Similarly, should Bestway not be enjoined from its unlawful and deceptive conduct, Plaintiffs and Class Members face the potential for irreparable future harm, including purchasing the Pools which are not safe or durable and instead, contain a uniform Defect and exposes consumers and their children to the risk of serious injury and death.

## VI. <u>Bestway's Actual or Constructive Knowledge of the Defect and Duty to Disclose the Defect</u>

104. Bestway knew, or should have known, when it sold the Pools to the public that they suffered from the Defect.

105. Additionally, Bestway knew, or should have known, that the Defect caused the Pools to fail in their regular and intended purpose including that they were unsafe, unstable, and unsuitable for consumers' and their children's use.

106. Bestway's knowledge of the Defect is established through its design of the Pools, knowledge of industry guidance and recommendations regarding pool safety, receipt of multiple reports of infant death in the Pools and lastly, the Recall, which further confirms that children have been dying as a result of the Defect since at least 2007.

107. Despite its knowledge, upon information and belief, Bestway did not remedy or eliminate the Defect in the Pools or remove them from the stream of commerce.

108. Instead, Bestway continued to unlawfully advertise the Pools as safe and durable and continued to sell the unreasonably dangerous Pools to consumers.

109. The Recall, for the reasons stated above, does not absolve Bestway of liability, especially given its position is a worldwide leader in the above-ground pool market.

110. In conjunction with Bestway's vast experience with above-ground pools, these facts and reports of children's deaths illustrate that Bestway knew, or should have known, of the Defect and the resulting incapability of the Pools to conform to its marketing of itself and the Pools as industry leaders.

111. Bestway had a duty to disclose the Defect and to not conceal the Defect from Plaintiffs and Class Members.

112. Bestway's failure to disclose, and/or active concealment of, the Defect places Plaintiffs and Class Members' and their children at risk of serious injury and/or death.

113. Bestway, even in light of the Recall, is currently still allowing the use of the defective Pools.

114. Had Plaintiffs, Class Members and the consuming public known that the Pools were defective, unsuitable for their marketed and intended use, and risk their children's lives, they would not have purchased them.

115. Bestway wrongly placed on Plaintiffs and Class Members the burden, expense, and difficulty involved in discovering the Defect and determining that the Pools are unsafe and paying for the cost of damages caused by the Defect.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

116. Bestway continuously manufactured, marketed and sold the defective Pools to unsuspecting customers. At all times relevant, it continuously represented that the Pools were fit for their intended use.

117. By continuously repeating these false representations and failing to disclose that the Pools contain the Defect, Bestway engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Bestway might seek to apply.

118. As the designer and manufacturer of the Pools, Bestway knew or should have known if the Defect before distributing the Pools into the consumer marketplace.

119. Bestway's knowledge of the Defect is evidenced by, amongst other things, the Recall Notice and reports of at least nine deaths as a direct result of the Defect.

120. Thus, at all relevant times, Bestway indisputably possessed continuous knowledge of the Defect, and yet Bestway knowingly continued to allow the sale of the Pools. Plaintiffs' and other Class Members' claims are therefore not time-barred.

121. Moreover, even after the Recall, there is no evidence that news of the Bestway Recall Notice or Defect reached all Pool owners.

122. Plaintiffs and other Class Members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Bestway knowingly failed to disclose material information within its knowledge about the Defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

123. Throughout the time period relevant to this action, Bestway concealed from, and failed to disclose to, Plaintiffs and the other Class Members vital information about the Defect described herein.

124. Bestway kept Plaintiffs and the other Class Members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

125. Bestway had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Pools and that the Pools have a uniform Defect.

126. Instead, Bestway continued to market the Pools as suitable for their intended purpose to further profit from the sale of its popular Pool products and prevent Plaintiffs and other Class Members from seeking redress.

127. Plaintiffs and the other Class Members justifiably relied on Bestway to disclose the true nature of the Pool they purchased and/or owned because the Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

128. Bestway's affirmative acts of concealment, including its continued marketing of the defective Pool as safe, reliable and fit for its intended purpose while possessing knowledge of the Defect, further support estoppel and tolling of any applicable limitations period.

## FED. R. CIV. P. 9(b) ALLEGATIONS

129. Although Bestway is in the best position to know information about the design, manufacture, distribution and sale of the Pools as well as the facts surrounding the Defect during the relevant timeframe, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

130. **WHO**: Bestway made material misrepresentations and/or omissions of fact through its marketing, on its website, product packaging, warranties, Owner's Manuals and labeling, through warranty claims, through reports of injuries and death associated with the Pools and the Defect and through authorized retailers of the

Pools, which include statements such that the Pools are not defective and are safe and suitable for their intended use.

131. **WHAT**: Bestway's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Pools are defective, unsafe and unsuitable for their intended use in that the Pools contain a uniform Defect. Bestway's employees and representatives made affirmative misrepresentations as a part of Bestway's marketing of the Pools to Plaintiffs and Class Members at the time of purchase regarding the same qualities. Bestway failed to adequately warn Plaintiffs and Class Members that the Pools contained the Defect, were not suitable for their intended use, and the Pools' Defect has caused injury and death. Further, Bestway's conduct has the effect of deceiving Plaintiffs and Class Members into believing that the Pools are not defective, and instead, are suitable for their intended use. Bestway knew, or should have known, the existence of the Defect is material to the reasonable consumer, including Plaintiffs and Class Members, and impacts their purchasing decisions, and yet Bestway omits a necessary warning that the Pools are defective and are unsafe and unsuitable for their intended use.

132. **WHEN**: Bestway made material misrepresentations and/or omissions during the putative class periods and at the time Plaintiffs and Class Members purchased the Pools, prior to and at the time Plaintiffs and Class Members made claims after realizing the Products contained a uniform Defect and continuously throughout the applicable class periods.

133. **WHERE**: Bestway's marketing message and omissions were uniform and pervasive, carried through material misrepresentations and omissions on the Pools' labeling and packaging, its website(s) and the websites of authorized retailers.

134. **HOW**: Bestway made material misrepresentations of material facts regarding the Pools, including, but not limited to, the existence of the uniform Defect as well as the associated risks.

135. **WHY**: Bestway made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiffs, Class Members and all reasonable consumers to purchase and/or pay a premium price for the Pools, the effect of which was Bestway profited by selling the Pools to many thousands of consumers.

136. **INJURY**: Plaintiffs and Class Members purchased, paid a premium or otherwise paid more for the Products when they otherwise would not have absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

137. Plaintiffs bring this action individually and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of themselves and the members of the following proposed nationwide class ("Nationwide Class"):

> During the fullest period allowed by law, all persons who purchased a Pool in the United States, for personal use and not resale, until the date notice is disseminated.

138. Plaintiffs brings this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of themselves and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):[40]

> During the fullest period allowed by law, all persons who purchased a Pool in the state of California or any state with similar laws,[41] for personal use and not resale, until the date notice is disseminated.

---

[40] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, Multi-State Consumer Protection Class and California Class.

[41] While discovery may alter the following, Plaintiffs assert that the other states

139. Plaintiffs further bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of themselves and the members of the following class ("California Class"):

> During the fullest period allowed by law, all persons who purchased a Pool in the State of California, for personal use and not resale, until the date notice is disseminated.

140. Members of the Nationwide Class, Multi-State Consumer Protection Class and California Class are referred to collectively as the "Class Members."

141. Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition, as necessary.

142. This action is brought and may properly be maintained as a class action

---

with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq.*), Arkansas (Ark. Code §§ 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq.*), District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq.* and §§ 350, *et seq.*), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*), Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc*., 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

143. **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, Bestway sold more than 2.4 million Pools throughout the United States and upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Bestway's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

144. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Pools contain the Defect alleged herein;

b. Whether Bestway knew, or should have known, of the Defect;

c. Whether Bestway had a duty to disclose the Defect to consumers;

d. Whether Bestway conduct alleged herein violated the consumer protection statutes alleged herein;

e. Whether Bestway failed to adequately warn Plaintiffs and Class Members that the Pools contained the Defect and drowning hazard;

f. Whether Bestway's representations and omissions were misleading or deceptive;

g. Whether Bestway omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Pools;

h. Whether Bestway concealed from and/or failed to disclose to Plaintiffs and Class Members that the Pools contain the Defect;

i. Whether Bestway's conduct was unfair or illegal;

j. Whether Plaintiffs and Class Members suffered economic injury;

k. Whether Bestway's conduct violates public policy;

l. Whether Bestway was unjustly enriched;

m. Whether Plaintiffs and putative members of the Class suffered an ascertainable loss of monies or property or other value as a result of Bestway's acts and omissions of material facts;

n. Whether Bestway was unjustly enriched at the expense of Plaintiffs and members of the putative Class in connection with selling the Pools with the Defect;

o. Whether Plaintiffs and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

p. Whether Plaintiffs and Class Members are entitled to injunctive, declaratory, or other equitable relief including modification of the Recall.

145. **Typicality.** Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members purchased and used the Pools, and sustained damages arising from Bestway's wrongful conduct, as disclosed herein. Plaintiffs share the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiffs and all members of the putative Class are similarly affected by Bestway's common misconduct alleged herein. Plaintiffs and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Bestway's deceptive representations and omissions concerning the Pools, the existence of the Defect, the risks attributable to the Defect and the Pools' fitness for their intended purpose, as well as the proposed repair's ability to function as intended.

146. **Adequacy**. Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiffs retained counsel with

substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs have no conflicts of interest or interests adverse to those of putative Class.

147. **Insufficiency of Separate Actions**. Absent a class action, Plaintiffs and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Bestway.

148. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Bestway will continue to commit the unlawful practices alleged herein, and Plaintiffs and Class Members will continue to be deceived by Bestway's representations regarding the inadequate Recall. Bestway acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, are necessary in this action.

149. Plaintiffs further seek injunctive and declaratory relief requiring Bestway to cease its unfair, deceptive and unlawful conduct, including a complete recall of the Pools and full reimbursement for the Pools' full purchase price.

150. Plaintiffs also seek a declaration that the Pools suffer from the Defect and that all warranties cover the Defect, which existed at the time of sale of the Pools to consumers, which was known to Bestway and unknown to consumers.

151. Plaintiffs and Class Members were harmed and will experience irreparable future harm should Bestway's conduct not be enjoined because they will

continue to use the Pool, which still contains the Defect even if the repair kit is installed as instructed by the Recall.

152. **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Bestway's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiffs and members of the putative Class will continue to suffer harm as a result of Bestway's unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiffs and the members of the putative Class can obtain redress for the harm caused by Bestway's misconduct.

153. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Bestway; and

Adjudications of claims of the individual members of the Class against Bestway would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

### COUNT I

### COMMON LAW FRAUD

***(By Plaintiffs, individually, and on behalf of the Nationwide Class, or in the Alternative, the California Class)***

154. Plaintiffs, individually, and on behalf of the Nationwide Class, or in the alternative, the California Class, reallege paragraphs 1 through 153 as if fully set forth herein.

155. Bestway's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the safe and durable marketing related to the Pools, when in fact the Pools contain the Defect.

156. Bestway knowingly, willfully, fraudulently and/or recklessly concealed and suppressed material facts regarding the Pools.

157. As detailed *supra*, Bestway made false or misleading statements to Plaintiffs and Class Members regarding the safety of the Pools. These uniform and pervasive representations were made through Bestway's marketing of itself and the Pools as industry leaders in pool safety, including on the Pools themselves, label and packaging materials, the websites of Bestway and its authorized retailers and other promotional materials for the Pools.

158. Bestway's representations were false and misleading because the Pools contain the Defect and the associated risks to consumers and their children, including injury and death.

159. As describe herein, prior to and after distributing the Pools into the consumer marketplace, Bestway knew that the Pools contained the Defect and

presented the associated risks to consumers and their children, including injury and death. Bestway also knew that the Pools' design, manufacture and marketing were inconsistent with industry guidance and standards, including from the CPSC. Nonetheless, Bestway, through its misrepresentations, misleading statements and omissions detailed herein, continued to sell the Pools in the United States, in order to increase its own profits, and garner market share, while putting the lives of more consumers and their children at risk.

160. Bestway knew the representations were false and intended that Plaintiffs and Class Members rely on them.

161. Bestway's conduct was further fraudulent because Bestway failed to disclose the Defect associated with the Pools. Specifically, Bestway failed to adequately warn Plaintiffs and Class Members that the Pools contained the Defect, were not safe or durable and could cause and had caused children to suffer injury and death.

162. These misrepresentations and omissions were material to Plaintiffs' and Class Members' decision to acquire the Pools. Plaintiffs and members of the Classes justifiably relied on Bestway's misrepresentations of material facts and omissions regarding the Pools, as described *supra*.

163. Bestway has a duty to disclose the truth regarding the safety of the Pools, because the safety of the Pools has a direct impact on the health and safety of the consumers and their children who utilize them. This duty arose from the fact that Bestway: had exclusive and/or far superior knowledge and access to knowledge regarding the safety and durability of the Pools; affirmatively and intentionally concealed material facts from Plaintiffs and Class Members; and knew that the Pools were not safe for their marketed and intended use.

164. The material facts Bestway represented and omitted to disclose were made to Plaintiffs and members of the Classes when they purchased the Pools.

165. Bestway intended that its misrepresentations and omissions of material fact would deceive or mislead Plaintiffs and members of the Classes and induce them to purchase the Pools.

166. Plaintiffs and members of the Classes justifiably relied on Bestway's misrepresentations and omissions of material facts regarding the Pools, as described *supra*.

167. Bestway's conduct showed malice, motive and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because Bestway's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

168. Bestway's misrepresentations and omissions of material facts directly and proximately caused the damages suffered by Plaintiffs and members of the Classes.

169. As a result of Bestway's misrepresentations and omissions of material facts, Plaintiffs and members of the Classes were damaged in an amount to be proven at trial.

**COUNT II**

**NEGLIGENT MISREPRESENTATION**

***(By Plaintiffs, individually, and on behalf of the Nationwide Class, or in the Alternative, the California Class)***

170. Plaintiffs, individually, and on behalf of the Nationwide Class, or in the alternative, on behalf of the California Class, reallege paragraphs 1 through 153 as if fully set forth herein.

171. As a seller of the Pool, Bestway had a duty to give correct information to Plaintiffs and Class Members regarding the truth and accuracy of the material facts, including knowledge of the Defect. Bestway had sole possession and control of this information and had a duty to disclose it accurately to Plaintiffs and Class Members.

172. Bestway created a special relationship with Plaintiffs and Class Members through its misrepresentations and omissions regarding safety and through its designing, manufacturing, marketing and selling the Pools as products specifically suitable for people, including children to use, climb in and swim in despite the presence of the Defect.

173. Bestway intended the sale of the Pools not only to affect Plaintiffs and Class Members, but Bestway actually considered the particular needs of consumers and designed, manufactured and sold the Pool for those consumers to meet their particular needs.

174. Bestway held, or appeared to hold, unique or special expertise and knowledge of the Pools. Bestway and Plaintiffs, as well as Class Members, had a special relationship of trust and confidence, and Bestway persuaded Plaintiffs and Class Members to purchase the Pool based on its misrepresentations and reputation of having expertise and knowledge.

175. Bestway affirmatively misrepresented and omitted material facts regarding the Pools' safety, including but not limited to explicit or implicit assurances that the Pools were safe and suitable for use. These false and misleading representations were made for the express purpose of inducing Plaintiffs and Class Members to purchase the Pools. Bestway knew, or should have known, that the Pools posed serious safety risks, and yet marketed and sold them as appropriate for use by children, thereby misleading reasonable consumers into believing it met applicable safety standards.

176. Because Bestway purposefully concealed the defective nature of the Pools and the serious safety risks caused by the Defect, Plaintiffs and the Class Members were not reasonably able to discover the Defect, despite their exercise of due diligence.

177. Bestway knew, or otherwise should have known, that the Pools contained the Defect and posed serious safety risks based upon: (1) Bestway's own

internal testing, data and surveys; (2) Bestway's Recall; (3) the multiple incident reports dated from 2007, before Bestway distributed and sold the Pools; and (4) the $25 million lawsuit in 2019 for the drowning of the 2-year-old girl that Bestway was found liable concerning the same Defect, per the CPSC Press Release.

178. Despite Bestway's knowledge of material facts concerning the existence of the serious safety risks posed by the Pool, Bestway actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

179. Bestway omitted, concealed and failed to disclose to consumers that the Pools pose serious safety risks to children, including that the Pools' design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Bestway marketed the Pools as safe and suitable for their intended purpose.

180. The facts concealed and/or not disclosed by Bestway to consumers, including Plaintiffs and other Class Members, were material, in part, because they concerned an essential aspect of the Pools, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Pools. Rather than disclose this information, Bestway marketed the Pools as complying with safety standards and regulations, with the utmost manufacturing and design.

181. Bestway intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiffs and other Class Members, to purchase the Pools.

182. Plaintiffs and other Class Members, without knowledge of the true nature of the Pools, justifiably acted or relied upon the concealed and/or nondisclosed material facts to their detriment, as evidenced by their purchases of the Pools.

183. As a direct and proximate result of Bestway's concealment and/or nondisclosure of material facts, consumers, including Plaintiffs and other Class Members were damaged as alleged herein, and are entitled to recover damages. Plaintiffs and other Class Members would not have purchased the Pools on the same terms had they known that they contained the Defect and posed serious safety risks.

184. Plaintiffs and Class Members are entitled to all relief the Court finds proper as a result of Bestway's conduct described herein.

## COUNT III

## BREACH OF EXPRESS WARRANTY

***(By Plaintiffs, individually, and on behalf of the Nationwide Class, or in the Alternative, the California Class)***

185. Plaintiffs, individually, and on behalf of the Nationwide Class, or in the alternative, on behalf of the California Class, reallege paragraphs 1 through 153 as if fully set forth herein.

186. In connection with the sale of the Products, Bestway expressly provided a 180 day warranty ("Warranty") that the Pools were free from manufacturing defects. Each Product has an identical or substantially identical Warranty.

187. Defendant further warrants that the Products are above-ground Pools and can be used as such.

188. The Products are defectively manufactured as alleged and are covered by Defendant's Warranty. Defendant admitted that the Products, as sold, are not safe and cannot be used as above-ground Pools without the Defect and associated serious safety risks.

189. Plaintiffs and the Class have privity of contract with Defendant through their purchase of the Products from an authorized retailer as stated in the written Warranty that accompanied the purchase and expressly applies to purchasers of the Products: "this warranty applies only to Products that were purchased from Bestway

or a Bestway authorized seller in the United States and Canada, unless otherwise prohibited by law."

190. Plaintiffs and the Class Members purchased the Products manufactured and marketed by Defendant by and through Defendant's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party. Defendant knew or had reason to know of the specific use for which the Products were purchased.

191. The express written Warranty was a material part of the bargain between Defendant and consumers. At the time it made this express Warranty, Defendant knew of the purpose for which the Products would be used and designed and intended them to be used for that specific purpose.

192. Defendant breached its express Warranty by selling Pools that contained the Defect, were not made for years of safe and dependable operation, not made from merchantable material and workmanship and could not be used for the ordinary purpose of a Pool. Defendant breached its express written Warranty to Plaintiffs and Class Members in that the Products are defective when made and thus contain the Defect on the very first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

193. The Products that each Plaintiff purchased were subject to the Defect and caused each of them injury because they would not have purchased the Products had they known of the Defect. Defendant expressly warranted in writing that it would repair or replace any defect in the Products. Additionally, the UCC specifically provides that the damages associated with breach of warranty are the difference between the product as warranted and the product delivered.

194. Upon information and belief, Defendant received notice and has known of the Defect since at least 2019 through customer warranty claims, consumers

reporting problems with the Products, customer complaints and its own internal and external testing.

195. Despite having notice and knowledge of the Defect, Defendant failed to provide an adequate remedy. As alleged herein, the repair kit is not an adequate remedy. Accordingly, Plaintiffs and the Class seek damages resulting from the Defect.

196. As a result of Defendant's breach of its express written Warranty, Plaintiffs and Class Members suffered damages.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY**
***(By Plaintiffs, individually, and on behalf of the Nationwide Class, or in the Alternative, the California Class)***

197. Plaintiffs, individually, and on behalf of the Nationwide Class, or in the alternative, on behalf of the California Class, reallege paragraphs 1 through 150 as if fully set forth herein.

198. The Products purchased by Plaintiffs and Class Members were defectively manufactured and posed a serious and immediate safety risk to consumers and the general public.

199. All of the Products sold by Defendant left Defendant's facilities and control with the Defect in the manufacture of the Products.

200. The Defect places Plaintiffs and Class Members at serious safety upon using the Products. Defendant admits that the Products cannot be safely used as Pools as sold.

201. The law imposes a duty requiring manufacturers or sellers of a product to ensure that the products are merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. This implied warranty of merchantability is part of the

basis of the bargain between Defendant and purchasers, including Plaintiffs and the Class Members.

202. Defendant breached the implied warranty of merchantability because the Products are defective and pose a serious safety risk, were not fit for the ordinary purposes for which they were used, would not pass without objection and failed to conform to the standard performance of like products. This Defect exists and is manifest in all Products.

203. Defendant knew, or should have known, that the Products posed a safety risk and were defective, and that it breached the implied warranties at the time it sold the Products to Plaintiffs and Class Members or otherwise placed them into the stream of commerce.

204. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiffs and Class Members bought the Products without knowledge of the Defect or the serious safety risk.

205. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiffs and Class Members purchased unsafe and defective Products that were not fit to be used for their intended purpose of a Pool.

206. As alleged in detail herein, Defendant received notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Products, customer complaints and its own testing.

207. Despite having notice and knowledge of the Defect, Defendant failed to provide a Defect-free Pool to Plaintiffs and Class Members, failed to provide adequate replacement of the defective Products and failed to provide any form of compensation for the economic damages resulting from the Defect.

208. Any attempt by Defendant to disclaim the implied warranty was improper, insufficient and of no effect.

209. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiffs and Class Members suffered damage.

## COUNT V

### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
***(By Plaintiffs, individually, and on behalf of the Multi-State Consumer Protection Class)***

210. Plaintiffs, individually, and on behalf of the Multi-State Consumer Protection Class, reallege paragraphs 1 through 153 as if fully set forth herein.

211. Plaintiffs and the Multi-State Consumer Protection Class Members were injured as a result of Bestway's violations of the state consumer protection statutes listed in paragraph 135, footnote 41, *supra*. These state consumer protection statutes provide a basis for redress to Plaintiffs and the Multi-State Consumer Protection Class based on Bestway's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

212. Bestway's conduct, as alleged herein, violates the consumer protection, unfair trade practices and deceptive laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

213. Bestway's marketing of the Pools violates these prohibitions by deceiving consumers into believing that the Pools are fit for their intended purpose despite the presence of the Defect.

214. Bestway engaged in fraudulent, unfair and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

215. Specifically, Bestway advertised in a misleading and deceptive manner that the Pools are fit for their intended purpose and did not contain the Defect that presents the associated risks. Bestway chose to package, label and market the Pools in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable consumers who purchase the Pools would be impacted by, and would reasonably believe, its false and misleading representations.

216. Bestway intended for Plaintiffs and Multi-State Consumer Protection Class Members to reasonably rely upon the material misrepresentations concerning the true nature of the Pools.

217. Bestway's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiffs and Multi-State Consumer Protection Class Members to be deceived about the true nature of the Pools.

218. Further, despite Bestway's knowledge of material facts concerning the existence of the serious safety risks posed by the Pools, Bestway actively concealed the serious safety risks and the Defect from consumers by failing to disclose the serious safety risks or Defect to consumers.

219. Bestway knew, or otherwise should have known, that the Pools contained the Defect and posed serious safety risks based upon: (1) Bestway's own internal testing, data and surveys; (2) Bestway's Recall; (3) the multiple incident reports dated from 2007, before Bestway distributed and sold the Pools; and (4) the $25 million lawsuit in 2019 for the drowning of the 2-year-old girl that Bestway was found liable concerning the same Defect, per the CPSC Press Release.

220. Bestway omitted, concealed and failed to disclose to consumers that the Pools pose serious safety risks to children, including that the Pools' design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Bestway marketed the Pools as safe and suitable for their intended purpose.

221. The facts concealed and/or not disclosed by Bestway to consumers, including Plaintiffs and other Class Members, were material, in part, because they concerned an essential aspect of the Pools, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Pools.

Rather than disclose this information, Bestway marketed the Pools as complying with safety standards and regulations, with the utmost manufacturing and design.

222. Bestway intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiffs and other Class Members, to purchase the Pools.

223. As a direct and proximate result of Bestway's misrepresentations, Plaintiffs and Multi-State Consumer Protection Class Members suffered ascertainable losses.

224. Had they been aware of the true nature of the Pools, Plaintiffs and Multi-State Consumer Protection Class Members either would have paid less for the Pools or would not have made the purchases at all.

225. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Multi-State Consumer Protection Class Members are entitled to recover compensatory, restitution, punitive and special damages, including, but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted by relevant law.

## COUNT VI

## UNJUST ENRICHMENT/QUASI CONTRACT

***(By Plaintiffs, individually, and on behalf of the California Class)***

226. Plaintiffs, individually, and on behalf of the California Class, reallege paragraphs 1 through 153 as if fully set forth herein.

227. Plaintiffs and the putative Class Members conferred a benefit on Bestway by purchasing the Pools—payments that Bestway knowingly accepted while aware of the Pools' Defect and unfitness for their intended use.

228. Bestway either knew, or should have known, that the payments rendered by Plaintiffs and Class Members were given with the expectation that the Pools had the qualities, characteristics and suitability for the use represented and

warranted by Bestway. As such, it would be inequitable for Bestway to retain the benefit of the payments under these circumstances.

229. By its wrongful acts and omissions described herein, including selling the Pools, which contained both a Defect and were inoperative for their intended use, Bestway was unjustly enriched at the expense of Plaintiffs and putative Class Members. The Pools could not even be assembled and filled with water, as they would inherently become drowning hazards.

230. Bestway's wrongful conduct directly caused Plaintiffs' detriment and resulted in Bestway's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

231. Bestway unjustly profited from its unlawful, unfair and deceptive conduct at the expense of Plaintiffs and the putative Class Members. It would be inequitable and contrary to principles of justice for Bestway to retain the profits, benefits and other compensation obtained through the sale of the Pools, as such enrichment was directly tied to the misconduct alleged herein.

232. Bestway was unjustly enriched by retaining revenue from Class Members' purchases of the Pools. Such enrichment is unjust and inequitable because Bestway knowingly manufactured, marketed and sold defective Pools while omitting material facts, causing Plaintiffs and Class Members to purchase Pools they otherwise would not have purchased had the truth been disclosed.

233. Bestway continued to manufacture the Pools with the inherent Defect even after knowing—and concealing—at least three incidents that occurred over two decades ago. Even after these known incidents, Bestway continued to tout the safety of its Pools, considerably profiting for decades.

234. Bestway's conduct allows it to knowingly realize substantial revenue from selling the Pools at the expense of, and to the detriment of, Plaintiffs and Class Members, and Bestway's benefit and enrichment. Bestway's retention of these benefits violates fundamental justice, equity and good conscience principles.

235. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Bestway to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

236. Plaintiffs and Members of the Class seek disgorgement of all profits resulting from such overpayment.

**COUNT VII**

**NEGLIGENCE**
***(By Plaintiffs, individually, and on behalf of the California Class)***

237. Plaintiffs, individually, and on behalf of the California Class, reallege paragraphs 1 through 153 as if fully set forth herein.

238. Bestway directly or indirectly, caused the Pools to be sold, distributed, packaged, labeled, marketed, promoted and/or used by Plaintiffs and the other Class Members.

239. At all times relevant, Bestway had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of the Pools, including the duty to take all reasonable steps necessary to manufacture, promote and/or sell a product that was not unreasonably dangerous to consumers and users of the Pools.

240. At all times relevant, Bestway had a duty to exercise reasonable care in the marketing, advertisement and sale of the Pools. Bestway's duty of care owed to consumers and the general public included providing accurate, true and correct information concerning the risks of using the Pools and appropriate, complete and accurate warnings concerning the potential safety risks regarding the use of the Pool, and, in particular, their uniform Defect.

241. At all times relevant, Bestway knew or, in the exercise of reasonable care should have known, of the Defect and the corresponding risks associated thereto.

242. Bestway knew, or otherwise should have known, that the Pools posed serious safety risks to consumers and their children, because of, among other things, their own internal testing, data and surveys, the Recall and the multiple reports of infant children's deaths associated with the Defect.

243. Accordingly, at all times relevant, Bestway knew or, in the exercise of reasonable care should have known, that use of the Pools created a dangerous and unreasonable risk of injury and death to consumers and their children when using the Pools, including Plaintiffs and the other Class Members.

244. Bestway also knew or, in the exercise of reasonable care should have known, that users and consumers of the Pools were unaware of the Defect of the Pools and the associated risks.

245. Bestway omitted, concealed and failed to disclose to consumers that the Pools poses serious safety risks to consumers and their children, including that the Pools were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contained a Defect. Bestway failed to adequately warn Plaintiffs and Class Members that the Pools contained the Defect, were not safe or suitable for their marketed and intended use and could have caused, and did cause, consumers and their children to be placed in the risk of harm and death. Rather than disclose this information, Bestway, through its marketing of itself and its Pools as industry leaders in pool safety, *inter alia*, marketed the Pools as safe and durable for their marketed and intended use.

246. A reasonable manufacturer, distributor or seller of the Pools, under the same or similar circumstances, would have warned of the Defect.

247. Bestway did not warn of the particular risks associated with the Pools as detailed *supra*, for reasons which fell below the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about.

248. As such, Bestway breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing,

marketing, supply, promotion, advertisement, packaging, sale and distribution of the Pools, in that Bestway manufactured, marketed, promoted and sold the Pools with the uniform Defect, knew or had reason to know of the Defect inherent in the Pools, knew or had reason to know that consumers' and their children's use of the Pools created a significant risk of serious injury and death and is unreasonably dangerous for consumers and their children and failed to prevent or adequately warn of these risks and injuries.

249. In breach of its duties, Bestway negligently: failed to design, manufacture, formulate and package the Pools without the uniform Defect; designed, manufactured and formulated the Pools such that they contained the uniform Defect; failed to conduct adequate research, and testing to determine the extent to which the Pools were likely to present a serious risk of harm and/or death to consumers and their children; and failed to warn that the Pools could and have caused children to be placed in dangerous situations resulting in injury and death.

250. Despite the ability and means to investigate, study and test the Pools and to provide adequate warnings, Bestway failed to do so. Indeed, Bestway wrongfully concealed information and further made false and/or misleading statements concerning the safety of the Pools.

251. Bestway was negligent in the following respects:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Pools without thorough and adequate pre-and post-market testing;

b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Pools while negligently and/or intentionally concealing and failing to disclose the results of trials tests, and, consequently, the risk of serious injury and death associated with use of the Pools;

c. Failing to undertake sufficient studies and conduct necessary testing and adverse event analysis to determine whether the Pools were safe for their intended use;

d. Failing to use reasonable and prudent care in the design, research, manufacture and development of the Pools to avoid the risk of serious harm and death to consumers and their children associated with the prevalent use of the Pools;

e. Failing to provide adequate instructions, guidelines and safety precautions to those consumers who Bestway could reasonably foresee would use the Pools;

f. Failing to disclose to Plaintiffs, Class Members, users/consumers and the general public that use of the Pools presented risks or serious injury of death to consumers and their children;

g. Failing to warn Plaintiffs and Class Members, consumers and the general public that the Pools' risk of harm was unreasonable and that there were safer and effective alternative pools available to Plaintiffs and other consumers;

h. Systematically suppressing or downplaying contrary evidence about the risks, incidence and prevalence the Defect uniformly present in the Pools;

i. Representing that its Pools were safe for their intended use when, in fact, Bestway knew, or should have known, that the Pools were not safe for their intended purpose;

j. Failing to make and/or submit any changes to the Pools' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Pools and related Defect;

k. Advertising, marketing and recommending the use of the Pools while concealing and failing to disclose or warn of the dangers known by Bestway to be associated with or caused by the use of the Pools and/or Defect;

l. Continuing to disseminate information to its consumers, which indicates or implies that Bestway's Pools are safe and suitable for their advertised and intended use; and

m. Continuing the manufacture and sale of its Pools with the knowledge that the Pools were unreasonably unsafe and dangerous to consumers and their children.

252. Bestway knew, or otherwise should have known, that it was foreseeable that consumers and their children, including Plaintiffs and the other Class Members, would be placed at risk of serious injury and death as a result of Bestway's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution and sale of the Pools.

253. Plaintiffs and the other Class Members did not know the nature and extent of the injuries that could result from the intended use of the Pools.

254. Bestway's negligence was the proximate cause of the injuries, harm and economic losses that Plaintiffs and the other Class Members suffered, as described herein.

255. Bestway's failure to warn or instruct was a substantial factor in causing Plaintiffs' and other Class Members' harm.

256. Bestway's conduct, as described *supra*, was reckless. Bestway regularly risked the lives of consumers and users of the Pools, including Plaintiffs, the other Class Members and their children, with full knowledge of the dangers of the Pools. Bestway made conscious decisions not to redesign, re-label, warn or inform the unsuspecting public, including Plaintiffs and the other Class Members.

257. Bestway further made the decision to issue the ineffective, insufficient and inadequate Recall, as described herein.

258. Bestway's reckless conduct therefore warrants an award of aggravated or punitive damages.

259. As a direct and proximate result of Bestway's wrongful acts and omissions in placing the defective Pools into the stream of commerce without adequate warnings of the risks of serious injury and death, Plaintiffs and the other Class Members were damaged.

## COUNT VIII

**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Civil Code §§ 1750, *et seq.***
***(By Plaintiffs, individually, and on behalf of the California Class)***
**(*for injunctive relief only*)**

260. Plaintiffs, individually, and on behalf of the California Class, reallege paragraphs 1 through 153 as if fully set forth herein.

261. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq*.

262. Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of the Pools to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The benefits purchased by Plaintiffs and the Class are "goods" within the meaning of the statute. Cal. Civ. Code § 1761(a).

263. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of Pools with the uniform Defect:

a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

b. "Representing that the Products are of a particular standard, quality and grade when they are not" (a)(7);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

e. "Representing that the subject of a transaction has been supplied in

accordance with a previous representation when it has not." (a)(16).

264. Defendant's unfair or deceptive acts or practices, including its concealments, omissions and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and California Class Members, about the true safety, quality and true value of the Products.

265. Further, despite Bestway's knowledge of material facts concerning the existence of the serious safety risks posed by the Pools, Bestway actively concealed the serious safety risks and the Defect from consumers by failing to disclose the serious safety risks or Defect to consumers.

266. Bestway knew, or otherwise should have known, that the Pools contained the Defect and posed serious safety risks based upon: (1) Bestway's own internal testing, data and surveys; (2) Bestway's Recall; (3) the multiple incident reports dated from 2007, before Bestway distributed and sold the Pools; and (4) the $25 million lawsuit in 2019 for the drowning of the 2-year-old girl that Bestway was found liable concerning the same Defect, per the CPSC Press Release.

267. Bestway omitted, concealed and failed to disclose to consumers that the Pools pose serious safety risks to children, including that the Pools' design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Bestway marketed the Pools as safe and suitable for their intended purpose.

268. The facts concealed and/or not disclosed by Bestway to consumers, including Plaintiffs and other Class Members, were material, in part, because they concerned an essential aspect of the Pools, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Pools.

Rather than disclose this information, Bestway marketed the Pools as complying with safety standards and regulations, with the utmost manufacturing and design.

269. Plaintiffs and the California Class suffered injury in fact and actual damages resulting from Defendant's material misrepresentations and omissions.

270. Defendant's violations present a continuing risk to Plaintiffs and the California Class, as well as to the general public, and therefore affect the public interest.

271. Defendant is on notice of the issues raised in this Count and this Complaint by way of, among other things, the Recall, as well as their own intrinsic knowledge of defect, consumer complaints and notice of children's injury and death.

272. Pursuant to § 1782(a) of the CLRA, Plaintiffs notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA on October 17, 2025, and demanded that it rectify the problems associated with the actions detailed herein and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by § 1782, Plaintiffs will move to amend their Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.

273. Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the Class, seek injunctive relief, including an order to enjoin Defendant from continuing its deceptive advertising and sale practices.

274. Pursuant to Cal. Civ. Code § 1780(d), declarations of venue are attached to this Complaint.

## COUNT IX

**VIOLATIONS OF THE CALIFORNIA**
**UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
***(By Plaintiffs, individually, and on behalf of the California Class)***

275. Plaintiffs, individually, and on behalf of the California Class, reallege paragraphs 1 through 150 as if fully set forth herein.

276. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

277. Plaintiffs and California Class Members who purchased Defendant's Products suffered an injury by virtue of buying Products in which Defendant omitted the Products' true quality. Had Plaintiffs and California Class Members known that Defendant omitted material information regarding the Products, they would not have purchased the Products.

278. Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this Complaint, including, without limitation, violations of the Song-Beverly Consumer Warranty Act, Cal Civ. Code §§ 1790, *et seq*., and negligent or fraudulent misrepresentation.

279. There is no benefit to consumers or competition by allowing Defendant to deceptively label, market and advertise its Products.

280. Defendant's conduct, as described herein, also constitutes a "fraudulent" business practice violative of the UCL. As explained in the preceding paragraphs, Defendant's false statements about the Product fraudulently present the impression that the Products were adequately safe to be used by children and would be easy to set up and maintain. This conduct was designed to—and did—deceive consumers as to the true quality and value of the Pools they purchased.

281. Defendant knew, or should have known, that its false representations and conduct constituted unlawful, unfair and fraudulent business practices likely to deceive reasonable consumers.

282. Plaintiffs and Class Members suffered injuries, in fact, and lost money as a result of each Defendant's UCL violations in that they were deceived into purchasing the Products, which were not adequately safe or easy to use for the purposes of Plaintiffs and the California Class Members.

283. At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiffs request inadequate, Plaintiffs and the California Class Members are entitled to equitable relief such as restitution and injunctive relief under Cal. Bus. and Pro. Code § 17203, enjoining Defendant from continuing to conduct business through unlawful, unfair and fraudulent acts and practices.

284. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and other California Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

## COUNT X

**BREACH OF IMPLIED WARRANTY OF**
**FITNESS FOR A PARTICULAR PURPOSE**
**Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code §§ 1790, *et seq.***
**(*By Plaintiffs, individually, and on behalf of the California Class*)**

285. Plaintiffs, individually, and on behalf of the California Class, reallege paragraphs 1 through 150 as if fully set forth herein.

286. California Class Members are consumers who purchased the Products primarily for personal, family or household purposes. California Class Members did not use the Product for business purposes.

287. California Class Members purchased the Products either directly from Defendant or from an authorized retailer in California.

288. California Class Members purchased the Products to be a safe, easy to use above-ground Pools. The Products are advertised with images of children, and highlight the ease of use of the Products. As discussed in more detail herein, Defendant specifically advertised the Products as easy to use and safe. Individuals purchasing the Products for their ease of use and safety features could not use them for that purpose because they are not safe or easy to use.

289. California Class Members discovered that the Products were not as safe as claimed when the Recall for the Products was issued indicating they pose a drowning risk unless repairs were made.

290. Defendant had reason to know that consumers of the Products would use them for a particular purpose: as an at-home Pool that would commonly be used by children.

291. Since Defendant is a manufacturer of pools and pool accessories and specifically sold the Products as safe and easy to use above-ground Pools, the California Class Members relied on Defendant's skill and judgment in furnishing adequately safe and easy to use Pools.

292. Defendant had reason to know that California Class Members would rely on its skill and judgement in furnishing adequately safe and easy to use above-ground Pools because it advertised the Products as such.

293. Plaintiffs and California Class Members were harmed by Defendant's conduct.

294. The failure of the Products to be suitable was the cause of harm to Plaintiffs and the California Class Members.

295. The Products are, in fact, not adequately safe and easy to use to be fit for intended use, and Plaintiffs and the California Class Members suffered damages as a result of Defendant's breach of implied warranty, the nature and exact amount to be determined at trial.

## COUNT XI

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Song-Beverly Consumer Warranty Act
### Cal. Civ. Code §§ 1790, *et seq.*
### (*By Plaintiffs, individually, and on behalf of the California Class*)

296. Plaintiffs, individually, and on behalf of the California Class, reallege paragraphs 1 through 150 as if fully set forth herein.

297. California Class Members are consumers who purchased the Products primarily for personal, family or household purposes. California Class Members did not use the Products for business purposes.

298. California Class Members purchased the Products either directly from Defendant or from an authorized retailer in California.

299. Pursuant to Cal. Civ. Cod. § 1782, the Products were accompanied by an implied warranty of merchantability.

300. Defendant impliedly warranted that the Products would pass without objection in the trade for the ordinary purpose for which they are intended. This includes the Products being adequately constructed or assembled to function as safe and easy to use above-ground Pools and conforming to the promises or affirmation of fact made to Plaintiffs and California Class Members.

301. As evidenced by the Defect alleged herein, the Products are non-merchantable because they do not have the quality the buyer reasonably expects. They do not pass without objection in the trade; namely, they were not adequately constructed or assembled to serve as safe and easy to use above-ground Pools and because they do not or could not conform to the promises or affirmations of fact made to Plaintiffs and California Class Members.

302. As a result of Defendant's acts and omissions, Plaintiffs and California Class Members sustained damage in the amount actually paid, plus prejudgment interest thereon at the legal rate.

303. As a further result of Defendant's actions, Plaintiffs and California Class Members sustained incidental and consequential damages in an amount yet to be determined, plus interest at the legal rate.

304. As a further result of Defendant's actions, Plaintiffs and California Class Members sustained damages equal to the difference between the value of the Products as accepted and the value the Products would have had if they had been as warranted.

305. As a direct result of Defendant's acts and omissions and in pursuing Plaintiffs' claims, Plaintiffs needed to retain legal counsel. Pursuant to the Song-Beverly Consumer Warranty Act, Plaintiffs are entitled to recover their attorneys' fees based upon actual time expended and reasonably in connection with the commencement and prosecution of this action.

## COUNT XII

### BREACH OF EXPRESS WARRANTY
### Cal. Com. Code § 2313
***(By Plaintiffs, individually, and on behalf of the California Class)***

306. Plaintiffs, individually, and on behalf of the California Class, reallege paragraphs 1 through 150 as if fully set forth herein.

307. Defendant marketed, sold and/or distributed the Products, and Plaintiffs and the Class Members purchased the Products.

308. California's express warranty statute provides that "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

309. The terms of the contract include the promises and affirmations of fact made by Defendant on the Products; packaging and through marketing and

advertising, as described herein.

310. The labeling, marketing and advertising of the Products contained express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Class and Defendant.

311. As detailed herein, Defendant made specific warranties and representations by representing the suitability and safety of its Pools.

312. Defendant made these express warranties regarding the Products' quality and safety in writing through the Products' packaging. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Products.

313. Defendant's advertisements, warranties and representations were made in connection with the sale of the Products to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties and representations regarding the Products in deciding whether to purchase the Products.

314. The Products do not conform to Defendant's advertisements, warranties or representations in that they contain the Defect. Defendant was on notice of this breach as it was aware of the Defect in the Products.

315. Privity exists because Defendant expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing and labeling that the Products were suitable and safe for their marketed use. As alleged herein, the marketing of the Products was uniform, controlled and disseminated directly by Defendant. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of sales contracts between Defendant and its retailers and/or distributors and it is foreseeable that consumers would be injured by Defendant's breach. The retailers and/or distributors were not intended to be the ultimate consumers of the Products.

316. Plaintiffs and the members of the Class performed all conditions

precedent to Defendant's liability under this contract when they purchased the Products.

317. As a direct and proximate result of Defendant's breaches of its express warranties and its failure to conform to the Products' express representations, Plaintiffs and Class Members were damaged. Plaintiffs and Class Members suffered damages in that they did not receive the Products they specifically paid for and that Defendant warranted them to be. In addition, Plaintiffs and Class Members paid a premium for Products that did not conform to the Defendant's warranties.

318. On or about October 10, 2025, Plaintiffs gave notice to Defendant that outlined Defendant's breaches of warranties as alleged herein by mailing a notice letter to Defendant's headquarters.

319. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and appropriate relief for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

a. Certification of the proposed Classes, including appointment of Plaintiffs' counsel as class counsel;

b. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent and unfair business practices alleged in this Complaint;

c. An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

d. An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not

legally available;

e. An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

f. An award of treble damages, except for those causes of action where treble damages are not legally available;

g. An award of restitution in an amount to be determined at trial;

h. An award of nonrestitutionary disgorgement of profits in an amount to be determined at trial;

i. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

j. For reasonable attorneys' fees and the costs of suit incurred; and

k. For such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: October 17, 2025

**BRYSON HARRIS SUCIU & DeMAY PLLC**

*/s/ Trenton R. Kashima*

Trenton R Kashima (SBN 291405)
19800 MacArthur Blvd., STE 270
Irving, CA 92612
Tel: 619-810-7047
tkashima@brysonpllc.com

Melissa S. Weiner*
Ryan T. Gott*
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com
rgott@pwfirm.com

Rachel Soffin* (FL Bar No. 18054)
Mailing Address:
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 205-2815
rsoffin@pwfirm.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs and the Class*